**Richard ANTOS, Plaintiff,**

v.

**BELL & HOWELL COMPANY, Defendant.**

**No. 93 C 5684.**

United States District Court, N.D. Illinois, Eastern Division.

July 7, 1995.

Dennis John Callahan, Thomas John Applegate, Erde & Callahan, Chicago, IL, for plaintiff.

Jeffrey Kenneth Ross, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

Plaintiff Richard Antos ("Antos") sues defendant Bell & Howell Company ("Bell & Howell") for age discrimination under the Age Discrimination in Employment Act [hereinafter ADEA], 29 U.S.C. § 623 *et seq.*

In a one count complaint, Antos alleges that Bell & Howell violated the ADEA when it terminated his employment. Antos also claims that Bell & Howell breached a contractual promise to pay him 52 (rather than 36) weeks of severance benefits following his termination. Bell & Howell moves for summary judgment, contending that Antos' ADEA claim is time barred. For the reasons discussed below, Bell & Howell's motion for summary judgment is granted, and Antos' contract claim is remanded to state court.

## BACKGROUND

The facts in this section have been taken from the complaint and answer, from the pleadings and exhibits and from the parties' Local Rule 12(M) and (N) Statements of Material Facts as to which there is no genuine issue. *See* UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, RULE 12.[1] In addition, the parties have filed Statements of Additional Facts pursuant to Local Rule 12(N)(3)(b).

Richard Antos was born on August 30, 1936, and was fifty-five (55) at the time Bell & Howell, his former employer, terminated him. Compl. ¶ 8. Antos began working for Bell & Howell on November 14, 1957, when he was twenty-one (21) years old. Compl. ¶ 7. In 1987, after 30 years of service, Bell & Howell promoted Antos to the position of Quality Control Manager in its DocuMail and Sorting Divisions. Rule 12(M) ¶ 1. Antos held this position for approximately four (4) years. Rule 12(M) ¶ 2. On August 21, 1991, Antos' supervisor, Peter Salamoun ("Salamoun") officially advised Antos, by an Internal Memorandum ("Memo"), that Bell & Howell intended to eliminate his management position in the DocuMail Division and would not "absorb" his "function" as a "full quality control position" in the Sorting Division. Def. Ex. 1. Antos was subsequently terminated on September 20, 1991, after 34 years of service. Rule 12(M) ¶ 4. At the time of his termination, Antos earned $71,000 per year.

---

1. Citations to the uncontested allegations in the complaint are designated: "Compl. ¶ —." References to Local Rule 12(M) and (N) are designated: "Rule 12(M) ¶ —"; "Rule 12(N) ¶ —"; and "Rule 12(N)(3)(b) ¶ —." Where the Rule 12(M) Statement is not contested by the Rule 12(N) Statement(s), reference will be made only to the relevant paragraph under Rule 12(M).

*See* Def.Ex. 3, Illinois Department of Human Rights ("IDHR") Notice of Dismissal ("Notice") at 2.

As a manager, Antos primarily supervised the work of quality control engineers, rather than performing the quality control work, himself. *Id.* Antos did not work full-time in either division. Instead, he spent about 60% of his time managing the quality control function in the DocuMail Division and 40% of his time managing the quality control function in the Sorting Division. Rule 12(M) ¶ 2.

The DocuMail Division was entirely dependent for its business on contracts from the United States Post Office, and Antos fully understood that his job continuity was a function of the division's ability to secure new manufacturing contracts. Rule 12(M) ¶ 3. By early 1991, Antos had been told that there were no new contracts for DocuMail, and by May of 1991, Antos knew that he was going to be terminated from the DocuMail Division by the end of the year. *Id.*

The scope of Antos' work in the Sorting Division was also changing in 1991. During the six months to one year before his termination, Bell & Howell reduced Antos' duties in the Sorting Division by 85%. Rule 12(M) ¶ 5. Twenty-five (25%) percent of this reduction constituted repair department supervision work which was taken away from Antos by his boss, Bob Reese. *Id.* Additionally, in the first half of 1991, Reese began relying more on Vic Uvero, a quality control engineer who reported to Antos, for the final test inspection work which debugged the software testing program. Rule 12(M) ¶ 6. The final test inspection work was an additional 30% of Antos' Sorting Division work. *Id.* Finally, sometime in 1991 before Antos' termination, Reese, himself, took over the management and administrative work in the quality control area, rather than working through Antos. This was another 30% of Antos' Sorting Division work. Rule 12(M) ¶ 6. All in all, 85% of Antos' Sorting Division work (40% of Antos' job) was absorbed or taken away from him at the same time that Bell & Howell planned to eliminate Antos' management position in DocuMail due to the company's inability to secure new manufacturing contracts.

Additionally, in the Spring of 1991, at the same time that Bell & Howell planned to eliminate Antos' DocuMail management position, profitability was down in the Sorting Division. Rule 12(M) ¶ 7. Not only did Bob Reese absorb Antos' supervision duties, but younger individuals, who did the actual testing work and were paid less money than Antos, were also retained and/or hired to perform software work, in addition to some of the non-supervisory duties performed by Antos. Rule 12(M) ¶¶ 8–9, 12–15. None of these younger individuals were given the same title Antos held at the time of his termination. Compl. & Answer ¶ 21; Ex. 3, IDHR Notice at 3; Rule 12(M) ¶ 7.

Not surprisingly, on August 21, 1991, Antos received an Internal Memorandum from Peter Salamoun, which notified him that he was not only being terminated from his position in DocuMail, but also that the Sorting Division would not be absorbing him as a full-time employee after his "phase-out" from DocuMail. The language of the Memorandum states in relevant part:

> Phillipsburg Sorting (Sorting Division) confirmed today that your function will not be absorbed as full Q.C. position in their organization after your phase-out from DocuMail.... In view of this decision, DocuMail will make your planned ... severance day effective September 20, 1991, ... Within the next 30 days all personal and operating matters will be addressed to responsibly conclude your long service with Bell & Howell. Please bring up any questions or concerns you might have or as they arise.

Def.Ex. 1.

After Antos was terminated, he filed an age discrimination charge against Bell & Howell with both the IDHR and the EEOC. Rule 12(M) ¶ 9; Def.Ex. 2, 3, 4. The IDHR charge was filed on December 28, 1991; it is not clear from the record when the EEOC charge was filed. Since Bell & Howell does not contest the timeliness of the EEOC charge, this Court will not either.[2]

---

2. A prerequisite for EEOC jurisdiction is that the charge be filed within 180 days after the alleged violation, except in situations where the individual has instituted proceedings with a state FEP

The IDHR dismissed Antos' charge on December 30, 1992, for lack of substantial evidence. Def.Ex. 2, IDHR Notice at 1. Similarly, the EEOC dismissed Antos' charge and issued a right to sue letter on June 30, 1993. Def.Ex. 1, EEOC Determination Letter at 2. Both the IDHR and the EEOC determined that the alleged ADEA violation occurred on August 21, 1991, the date Antos was notified of his impending termination.[3] Def.Ex. 1, EEOC Determination Letter at 1; Def.Ex. 2, IDHR Notice at 2. In its determination letter, the EEOC advised Antos that he could file a lawsuit in federal district court "within 2 years of the date of alleged discrimination or within 90 days of receipt of this letter, whichever is earlier, in order to assure the right to sue." Def.Ex. 2, EEOC Determination Letter at 2. The IDHR and EEOC determined that the "date of alleged discrimination" was August 21, 1991, the date Salamoun communicated Bell & Howell's termination decision to Antos by Memo. Two years from the date of this discrimination was August 21, 1993. Ninety days from the date of the EEOC charge was September 30, 1993. The EEOC clearly instructed Antos to file a complaint within the "earlier" of those two dates, i.e., August 21, 1993. Antos filed his complaint on September 17, 1993.

## LEGAL STANDARDS

 Summary judgment is appropriate when there remains no genuine issue of material fact upon which a reasonable jury could find in favor of the non-moving party, or the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c). One of the principle purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–27, 106 S.Ct. 2548, 2552–2555, 91 L.Ed.2d 265 (1986). Thus, although the moving party on a motion for summary judgment is responsible for demonstrating to the Court why there is no genuine issue of material fact, the non-moving party must go beyond the face of the pleadings, affidavits, depositions, answers to interrogatories, and admissions on file, to demonstrate through specific evidence, that there remains a genuine issue of material fact and show that a rational jury could return a verdict in the non-moving party's favor. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–27, 106 S.Ct. 2548, 2552–2555, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 254–55, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348,

---

agency. In that situation, a charge must be filed with the EEOC within the earlier of 300 days after the alleged violation or within 30 days after the individual receives notice that the FEP agency terminated proceedings. *See* Title VII § 706(d), 42 U.S.C. § 2000e–5(e). If an individual resides in a jurisdiction where there is an FEP Agency, that individual must initially file a charge with the state agency before filing with the EEOC. To determine the timeliness of filing in this circumstance, see Title VII, § 706(c), 42 U.S.C. § 2000e–5(c).

Illinois is a "deferral" state but allows some variation from the above-stated filing requirements due to a work-sharing agreement between the Illinois Department of Human Rights and the EEOC. A claimant in Illinois may file a charge directly with the EEOC past the 180 day deadline, but the charge must be filed within 300 days of the alleged violation. If a claimant avails him/herself of this relaxed deadline and files with the EEOC within 300 days, the claimant is limited to federal remedies under Title VII (meaning state law remedies that may have been available if the claimant timely filed with the state are no longer available).

3. Antos did not contest this fact in the IDHR proceedings. The IDHR complaint, like an EEOC charge, provides the roadmap for a subsequent civil action. As we explained in *Parker v. City of Chicago,* 1994 WL 419613 (N.D.Ill.1994), the allegations raised in the complaint in a civil action must remain within the scope of those claims raised in the EEOC charge. *Id.* at *1 (citing *Jenkins v. Blue Cross Mutual Hospital Ins., Inc.,* 538 F.2d 164, 167 (7th Cir.), *cert. denied,* 429 U.S. 986, 97 S.Ct. 506, 50 L.Ed.2d 598 (1976) and *Chambers v. American Trans Air, Inc.,* 17 F.3d 998, 1003 (7th Cir.1994). The purpose behind the exhaustion requirement is to allow the EEOC a chance to mediate between the parties. *Oxman v. WLS–TV,* 595 F.Supp. 557, 559 (N.D.Ill.1984). The exhaustion requirement is similar to notice pleading under Rule 8: the EEOC must be put on general, broad notice of a claim. *Parker,* 1994 WL 419613, *1. If a complainant is allowed to dispute facts not previously disputed in the administrative hearings, then the exhaustion requirement is undermined. This is one more reason that Antos cannot now claim that the operative date of discrimination was September 20, 1991, rather than August 21, 1991.

1356, 89 L.Ed.2d 538 (1986). Consequently, the inquiry on summary judgment is whether the evidence presents a sufficient disagreement to require submission to a jury, or whether the evidence is so one-sided that one party must prevail as a matter of law. *Anderson,* 477 U.S. at 251–52, 106 S.Ct. at 2512. Disputed facts are material when they might affect the outcome of the suit. *First Ind. Bank v. Baker,* 957 F.2d 506, 507–08 (7th Cir.1992). A metaphysical doubt will not suffice. *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1355. Nonetheless, the Court must view all inferences to be drawn from the facts in the light most favorable to the opposing party. *Anderson,* 477 U.S. at 247–48, 106 S.Ct. at 2510; *Beraha v. Baxter Health Care,* 956 F.2d 1436, 1440 (7th Cir.1992). If the evidence is merely colorable, or is not significantly probative, or is no more than a scintilla, summary judgment may be granted. *Id.* at 249–250, 106 S.Ct. at 2511.

## *ANALYSIS*

### *I. ADEA Claim*

Bell & Howell moves for summary judgment, claiming that the complaint is time barred by the ADEA's two-year statute of limitations because it was filed on September 17, 1991, more than two years after August 21, 1991, the date that Bell & Howell communicated its termination decision to Antos. *See* Defendant's Memorandum In Support of Motion for Summary Judgment at 5 ("Def.Mem. at ——"). Antos argues that the "date of discrimination" was September 20, 1991, the date on which Antos was actually terminated, rather than August 21, 1991, the date Antos received notice of the adverse personnel decision.

After careful review, the Court finds that Antos' complaint is barred by the two-year statute of limitations set forth in the Portal-to-Portal Pay Act, 29 U.S.C. § 255, which applies to actions brought under the ADEA where the alleged act of discrimination occurred before November 21, 1991, the effective date of the Civil Rights Act of 1991 ("CRA"). *See* 29 U.S.C. § 626(e)(1) (1985).[4] In *Finnegan v. Trans World Airlines, Inc.,* 767 F.Supp. 867, 872 (N.D.Ill.1991), Judge Moran held that, "[t]he Seventh Circuit's decision in *Cada v. Baxter Healthcare Corp.,* 920 F.2d 446 (7th Cir.1990), ... settles the dispute." In *Cada,* the Court held that the Supreme Court case of *Delaware State College v. Ricks,* 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980), "establishes that it is the date of ... [the] adverse personnel action, not the date on which the action takes effect ... that—provided it is communicated to the employee, ... is the date of accrual [for an employment discrimination claim]." *Cada,* 920 F.2d at 453. In this case, the adverse personnel action, and thus the allegedly discriminatory act, occurred on August 21, 1991. This case must therefore must be governed by the two-year limitations period. Since the complaint was filed on September 17, 1993, twenty-five (25) days beyond the two-year limit, this limitations period bars review of Antos' ADEA claim on the merits.

### A. Willfulness

Antos could avoid the two-year statute of limitations if the evidence supported an inference that Bell & Howell's alleged ADEA violation was willful. In *Parker v. City of Chicago,* 1994 WL 419613 (N.D.Ill.1994), this Court previously found that

[a] violation of the ADEA is 'willful' if the employer ... knew or showed reckless

---

**4.** Prior to the effective date of the CRA, the ADEA provided that all causes of action for age discrimination must be commenced within two years from the date of the allegedly discriminatory act unless such act was "willful." 29 U.S.C. § 626(e)(1) (1985) (providing that two-year statute of limitations set forth in the Portal-to-Portal Pay Act, 29 U.S.C. § 255, shall apply to actions brought under the ADEA). If the alleged discriminatory act was willful, a three-year limitations period applied. *Id.* In 1991, the CRA amended the statute of limitations under the ADEA to provide that a civil action for age dis-

crimination may be brought within ninety days after the plaintiff receives a notice from the EEOC that it has dismissed the charge or that the proceedings before it have otherwise terminated. Pub.L. No. 102–166, 105 Stat. 1071. The Supreme Court recently determined that the CRA does not apply retroactively, however, to acts of alleged discrimination that occurred before November 21, 1991, the effective date of the CRA. *See Landgraf v. U.S.I. Film Products,* —— U.S. ——, —— ———, 114 S.Ct. 1483, 1507–08, 128 L.Ed.2d 229 (1994).

disregard for the matter of whether its conduct was prohibited by the ADEA. *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 126 [105 S.Ct. 613, 624, 83 L.Ed.2d 523] (1985); *see also McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 133 [108 S.Ct. 1677, 1681, 100 L.Ed.2d 115] (1988); *Shager v. Upjohn Co.,* 913 F.2d 398, 406 (7th Cir.1990). Mere unreasonableness does not suffice: 'if an employer acts unreasonably, but not recklessly in determining its legal obligation, ... [its action] should not be [ ] considered [willful].' *McLaughlin,* 486 U.S. at 135 n. 13 [108 S.Ct. at 1682 n. 13]. Nor is an employer who simply knows of the potential applicability of the ADEA 'willful.' *Thurston,* 469 U.S. at 127 [105 S.Ct. at 624].

▮▮▮ If the alleged discriminatory act was willful, the limitations period under the ADEA for actions accruing before November 21, 1991, is extended from two years to three years. Antos offers no evidence from which a reasonable jury could infer that Bell & Howell's violation was willful. Although the complaint reveals a conclusory allegation that Bell & Howell's actions were "wilful," Compl. ¶ 40, Antos must plead some facts to substantiate this assertion.[5] The record, however, does not contain sufficient facts to support a reasonable inference that Bell & Howell either knew its actions violated the law or recklessly disregarded its obligation under the law.[6]

### B. The Discovery Rule & Equitable Tolling

▮▮▮ The facts of this case also do not support postponement or tolling of the limitations period. Equitable tolling, like all tolling doctrines, stops the applicable statute of limitations from running. By definition, equitable tolling enters the picture after the statute has begun to run. Generally, a statute of limitations begins to run on the date of the injury, i.e., the date when the discriminatory act occurred. "The rule that postpones the beginning of the limitations period from the date when the plaintiff is wronged to the date when ... [the injury has been discovered] is the 'discovery rule'...." *Cada v. Baxter Healthcare,* 920 F.2d 446, 450 (7th Cir. 1990). Once the plaintiff discovers an injury, the statute begins to run and will run to its completion unless it is tolled.

▮▮▮ Equity, however, is not without its own limitations. Standards of "reasonableness" must guide a court's application of the discovery rule and the equitable tolling doctrine. For instance, the limitations period will be postponed from the date of accrual (i.e., the date of the injury) only if a *reasonable* person in the plaintiff's position would not have known that he or she had been injured. Similarly, "a plaintiff who invokes equitable tolling to suspend the statute of limitations must bring suit within a *reasonable* time after he [or she] has obtained, or by due diligence could have obtained, the necessary information." *Id.* at 453.

▮▮▮ The undisputed facts establish that Antos discovered his injury (the fact of his impending termination and the asserted reason(s) for it) on August 21, 1991. Although the effects or consequences of this injury were not directly felt until September 20, 1991 (the date of his actual termination), injury has been defined as "the date of firing or other adverse personnel action(s), not the date on which the action takes effect and the plaintiff is terminated." *Id.* Whether Antos was subjectively confused about the actual date of his termination is irrelevant. The only relevant date is the date on which the adverse personnel decision was made, and the only relevant inquiry is whether this personnel decision was clearly communicated to Antos on that date. Antos claims that he

---

5. Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." FED.R.CIV.P. 8(a)(2). In addition, Rule 9(b) provides that "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally." FED. R.CIV.P. 9(b). Even under these liberal standards, however, Mr. Antos has failed to properly allege willfulness.

6. This finding, however, does not reflect any view the Court might have regarding the viability of an ADEA claim on the merits. We only find that the complaint and the other pleadings fail to allege facts sufficient to support an inference of willfulness which would extend the statute of limitations to three years.

could not "reasonably rely" on the August 21, 1991, Memo "as the final word on his separation from Bell & Howell." Antos misses the point. Even if the Memo was not the "final word," it was an official expression of Bell & Howell's decision to terminate Antos which was communicated to him. Antos also admits that he received the Memo and understood that he would be terminated—even if he was not certain about the actual date of termination. Antos can be said to have discovered his injury, as a matter of law, on the date he received this Memo, because no reasonable person could conclude otherwise.[7]

■ A statute is equitably tolled when a plaintiff, "despite all due diligence ... is unable to obtain vital information bearing on the existence of [the] claim." *Cada,* 920 F.2d at 451. In other words, if the plaintiff knows that he or she has been injured, so that the statute of limitations has begun to run, "but he [or she] cannot obtain information necessary to decide whether the injury is due to wrongdoing and, if so, wrongdoing by the defendant," then a court will toll the limitations period for the sake of equity. *Id.*

■ The doctrine of equitable tolling, although not expressly raised by Antos' counsel, cannot be applied in this case. The material facts outlined in this opinion were known by Antos before the date of his separation from Bell & Howell. Any additional facts asserted by Antos—for instance, the posting of a new quality control engineer position a few weeks after his departure—are not material and therefore cannot trigger the application of this doctrine.

Moreover, once Antos was formally separated from Bell & Howell he filed two timely administrative actions with the IDHR and EEOC. Both of these agencies placed Antos on notice that the operative date of his ac-

tionable violation was August 21, 1991—the date he was notified of his termination. The EEOC also indicated in its right to sue letter of June 30, 1993, that Antos' potential lawsuit must be filed two years from this operative date. Yet, even though Antos had been actively challenging his termination since December 28, 1991, he failed to file his lawsuit within the applicable two-year period. Given the relative ease of converting a prior administrative complaint into a federal lawsuit under our liberal notice pleading rules, the failure of Antos' counsel to file a timely complaint is inexcusable. Moreover, Antos has simply failed to set forth any reasons which would justify the use of equitable tolling in this case.

To summarize, we have concluded that the accrual date for the applicable statute of limitations was August 21, 1991, the date that Bell & Howell communicated to Antos its intent to terminate him; this is also the discovery date of Antos' injury. Because this injury occurred prior to November 21, 1991, the CRA does not apply retroactively, and the two-year statute of limitations under the Portal-to-Portal Pay Act applies. The two-year statute of limitations began to run on August 21, 1991, and was not equitably tolled by an inability to obtain the information necessary to determine or charge the defendant with wrongdoing. For purposes of the ADEA, the two-year limitations period ran on August 21, 1993, twenty-five days before Antos' complaint was filed in federal court. Antos' ADEA claim is therefore time barred and must be dismissed. Bell & Howell's motion for summary judgment on the ADEA claim will be granted.

## II. Contract Claim

■ When a federal court loses subject matter jurisdiction over a case, supplemental

---

7. The Memo that Antos received on August 21st indicates that Bell & Howell intended to terminate Antos' employment. The language used, "within the next 30 days all personal and operating matters will be addressed to responsibly conclude your long service with Bell & Howell," Def.Ex. 1, would demonstrate to a reasonable person that he or she was being terminated from the company. In addition, by August 21st, Bell & Howell had reassigned most of Antos' duties within the Sorting Division so that he could

reasonably conclude that termination from the DocuMail Division signified termination from the company. Rule 12(M) ¶¶ 5, 8. Even though Antos reported to the Sorting Division until September 20th, his diminished responsibilities within the division together with Salamoun's Memo should have indicated to Antos that Bell & Howell intended to terminate him. Since Antos should have reasonably known that Bell & Howell was terminating him, the two year limitations period has run out on Antos' ADEA claim.

state law claims may be remanded to state court if equitable considerations warrant such an action. In *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), the Supreme Court held that the decision to dismiss state law claims which are no longer pendant to federal claims is a matter of discretion left to the district court. However, the Supreme Court listed several factors to consider when exercising this discretion, such as judicial economy, convenience, fairness and comity. *Id.* at 726–27, 86 S.Ct. at 1139. *See also Carnegie Mellon Univ. v. Cohill,* 484 U.S. 343, 351–53, 108 S.Ct. 614, 620, 98 L.Ed.2d 720 (1988).

 The interest of judicial economy encompasses the court's concern with the amount of time it has spent on the merits of the case. If a district court is able to decide the state law issues in a more efficient manner than the state court, then these issues should be decided rather than remanded. Generally, judicial resources would be wasted if a federal district court spends considerable time on the merits, dismisses the federal cause of action and then remands the state law claim, which depends upon an analysis of the same set of facts, but simply requires application of a different set of legal principles. This is not such a case. Since this Court has dismissed the case on federal statute of limitations grounds, we have not spent a great deal of time considering the merits or the facts which were immaterial to the procedural determination just made. Similarly, we do not believe that the interests of convenience, fairness and comity are at stake on remand. We therefore believe that the state law claims should be addressed on the merits in state court and accordingly remand this case.

### CONCLUSION

Richard Antos' story is not uncommon. In times of reduced profitability, companies begin to downsize, eliminating middle management positions held by older employees making considerably more money than their younger counterparts. The terminated employee then brings an age discrimination lawsuit against their former employer under the ADEA, and (after administrative review by the EEOC and/or the IDHR) a federal district court is called upon to determine whether the facts alleged in the complaint support a claim for relief, and if so, whether the material facts are in dispute. Antos is in this Court seeking an answer to these questions. We cannot reach these questions, however, because Antos' complaint containing his ADEA claim was filed beyond the applicable two-year statute of limitations and is therefore time barred. Accordingly, the Clerk of the Court is directed to enter partial summary judgment in favor of Bell & Howell and against Richard Antos on the ADEA claim. The common law breach of contract claim is remanded to state court. This case is terminated, and each party is to bear their own costs.