EQUAL EMPLOYMENT OPPOR-
TUNITY COMMISSION,
Plaintiff–Appellant,

v.

OUR LADY OF THE RESURRECTION
MEDICAL CENTER, Defendant–
Appellee.

No. 95–2302.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 5, 1995.

Decided Feb. 20, 1996.

Mary L. Clark (argued), E.E.O.C. Office of General Counsel, Washington, DC, for Plaintiff–Appellant.

James D. Fiffer (argued), Shanthi V. Gaur, Wildman, Harrold, Allen & Dixon, Chicago, IL, for Defendant–Appellee.

Before H. WOOD, Jr., COFFEY, and MANION, Circuit Judges.

MANION, Circuit Judge.

The Equal Employment Opportunity Commission, on behalf of Lyvonne Braddy, claims that Our Lady of the Resurrection Medical Center discriminated against Braddy because she is black when her employment as a social worker at the Center ended in October 1991. Because the EEOC proffered insufficient evidence that the Center discriminated against Braddy, we affirm the district court's grant of summary judgment to the Center.

## I.

### A. Factual Background

Braddy was the only black person to apply for a job as a social worker at Our Lady of the Resurrection Medical Center in Chicago, Illinois. Leah Boettcher, the Center's director of social work, interviewed and hired Braddy over a number of white applicants in January 1991.

When Boettcher interviewed Braddy, Boettcher told her she needed to be licensed by the Illinois Department of Professional Regulation ("the Department") to practice social work in Illinois and at the Center. Around 1989 the Department began offering an examination and issuing licenses to social workers. Individuals with a bachelor's degree can sit for the exam if they complete three years of supervised clinical experience. These were called clinical social workers. Social workers with a master's degree in social work are eligible to take the exam at any time.

After Braddy was hired the Center found out she needed six more months of supervised counseling experience before she could take the social work licensure exam. Boettcher offered to provide Braddy the additional clinical supervision but in return asked Braddy to ready the paperwork such that when the six-month supervision period ended Braddy could take the exam. Braddy agreed to this arrangement.

Braddy received the exam packet from the Department and sent forms to a former employer, University Hospital of Jacksonville, to confirm her employment there as a social worker. At the time Braddy began this process the next exam was in October 1991. In September 1991 the Department informed Braddy it had not received the information necessary to process her application, including the information from University Hospital. Braddy told Boettcher of this problem. Braddy called University Hospital, confirmed she could send them another form, and told Boettcher the hospital had agreed to complete the resubmitted form. Braddy did not tell University Hospital the form should be completed quickly due to the upcoming test. Nor did she follow up on her request by calling the hospital to confirm it had submitted the necessary materials. The form was the only outstanding information needed to render Braddy eligible to sit for the October 1991 licensure exam.

When Braddy ran into this paperwork problem she believed she would not be allowed to take the October 1991 test. But Braddy did not share this concern with Boettcher. Boettcher learned only the day before the exam that Braddy would not be sitting for the test. When Boettcher asked Braddy why, she told her that because she had not submitted the necessary paperwork, she was ineligible to sit. This upset Boettcher. Here the parties' versions of the facts diverge.

According to Braddy, when Boettcher found out Braddy would not be taking the exam, Boettcher told her: "You can't work at the hospital as a social worker in the State of Illinois without being licensed." Braddy says Boettcher then left the office, returned with an "exit form," and suggested that Braddy sign the form to reflect she was leaving the Center voluntarily. Braddy says she refused to sign the form because she was not leaving voluntarily and because if she did so she would not have been eligible to receive unemployment compensation.

Boettcher's version of the facts differs. Boettcher testified that when she found out Braddy would not be sitting for the exam, Boettcher went back to her office to call University Hospital to see why the necessary paperwork had not been completed. Boettcher wondered at this point if Braddy had ever actually worked at University Hospital, and she was upset that after 10 months Braddy was still not eligible to sit for the exam. Boettcher says when she reached her office she realized she did not know the dates Braddy worked at University Hospital. Boettcher returned to Braddy's office to get those dates. Boettcher says Braddy at this time told her not to bother because she had checked with the Department and had been told she could not practice without a license. Boettcher says Braddy then told her she was leaving the Center, at which time Boettcher told Braddy she must complete an "exit form."

Boettcher asserts she wanted the exit form to indicate that Braddy's employment ended voluntarily. Boettcher testified Braddy asked her to complete the exit form in a manner that would be consistent with receipt of unemployment compensation. Boettcher did so. But because the exit form did not accurately reflect the circumstances of Braddy's departure, the next day Boettcher drafted a memorandum to the file describing her version of the events of October 11, 1991. Boettcher denies telling Braddy she could not work at the Center without a license. Boettcher said she could have continued to work at the hospital without taking the October 1991 exam.

The parties agree Boettcher wrote on the exit form "Employee did not complete papers necessary for licensure & cannot practice social work in the State of Ill without a license." Boettcher also wrote: "At time of employment, employee was informed of need to take licensure exam." Written next to this latter statement is the phrase "NO TIME REQT." This phrase appears to have been added after the exit form was signed.

During Braddy's stint as a social worker at the Center Boettcher also hired Mark Sinz, a white male. At the time of hire Sinz did not have an Illinois social worker's license. But, unlike Braddy, he did have a master's degree in social work and thus was immediately eligible to take Illinois' social work licensing exam. Sinz sought and received permission not to take the first exam offered after his hiring because it conflicted with his wedding. Sinz did not suffer any adverse employment action for his delay in taking the exam, and eventually took and passed the October 1991 test. Braddy now compares her situation to Sinz's and claims it indicates the Center's racial bias.

## B. District Court Opinion

The EEOC sued the Center alleging it engaged in racial discrimination in violation of § 703(a) of Title VII, 42 U.S.C. § 2000e–2(a), when it terminated Braddy's employment as a social worker. Braddy intervened in the action, but is not a party to this appeal.[1] Because the EEOC did not claim any direct proof of racial discrimination against Braddy, the district court considered the case under the "indirect, burden-shifting method of proof" as described in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Dep't. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

The district court first found the EEOC had stated a *prima facie* case of race dis-

---

1. Braddy did not file a notice of appeal from the district court's order granting summary judgment. The EEOC is authorized to bring this action on Braddy's behalf by 42 U.S.C. § 2000e–5(f)(1) and (3).

crimination: Braddy is black and there was no evidence her performance displeased the Center. Perhaps because there was only one possible instance of disparate treatment (Sinz) instead of a pattern of discrimination, the EEOC chose to argue strongly that Braddy was discharged. Although the Center disputed this fact, it also realized that this disputed issue of material fact must be resolved in favor of Braddy for purposes of the Center's summary judgment motion. Accordingly, the Center acknowledged the discharge for purposes of summary judgment, and the district court so found. Using the presumption that Braddy was discharged, the district court also found the Center treated Braddy worse than Sinz, a similarly situated employee outside the protected class.

Once the district court accepted the EEOC's formula for establishing a *prima facie* case, it also found the Center had satisfied its burden of articulating a legitimate nondiscriminatory reason for its actions: Boettcher testified Braddy was terminated because of her failure to complete the necessary paperwork and take the October 1991 licensure exam. The EEOC had argued the Center could not meet this burden because the Center asserted it never terminated Braddy in the first place. In the district court's words: "[T]he EEOC maintains that the Center cannot present a legitimate reason for doing something that it claims it never did." The lower court rejected this contention. It recognized that under the EEOC's reasoning an employer could only dispute whether or not an employee was fired at the peril of automatically losing the case if the employee established a *prima facie* case. This would be an inaccurate construction of the McDonnell Douglas/Burdine test and a distortion of its purpose of using indirect proof when insufficient direct evidence exists.

Once the district court found the Center had set forth a legitimate reason for its conduct, the *prima facie* case dropped out, and the EEOC was left with its ultimate burden of proof by a preponderance of the evidence that the Center's proffered explanation was pretextual and that Braddy was unlawfully discriminated against. For at least two reasons, the district court concluded the EEOC failed to present evidence sufficient to overcome the inference of nondiscrimination: First, the fact Boettcher hired and fired Braddy created a strong inference against a finding of discrimination because a person who intends to discriminate against minorities is unlikely to hire them in the first place. Second, the district court found the EEOC's evidence that Sinz was treated more favorably than Braddy insufficient to overcome this inference of nondiscrimination. Although for purposes of establishing the *prima facie* case the district court gave Braddy the benefit of the doubt and found Braddy and Sinz similarly situated, they did behave differently. Sinz asked for and received permission to postpone taking the social work licensure exam. Braddy committed to taking the exam but failed to ensure submission of the proper papers and failed to notify superiors of this deficiency. Accordingly, because Braddy could not come up with additional evidence of discrimination in order for a reasonable jury to find in her favor, the district court granted summary judgment for the Center. This court reviews *de novo* the district court's grant of summary judgment. *Sample v. Aldi, Inc.*, 61 F.3d 544, 546 (7th Cir.1995).

## II.

Because the EEOC did not claim any direct proof of racial discrimination against Braddy, we consider this case, as did the district court, under the familiar indirect burden-shifting method of proof of *McDonnell Douglas/Burdine:* First plaintiff must establish a *prima facie* case of racial discrimination, which "creates a presumption that the employer unlawfully discriminated against the employee." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993) (citing *Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094). In a case of alleged discriminatory discharge, plaintiff could make out a *prima facie* case by proving (1) she was within a protected class; (2) her performance met her employer's legitimate expectations; (3) she was terminated; and (4) others not in her protected class received more favorable treatment.

*Sample,* 61 F.3d at 548. If the plaintiff successfully establishes a *prima facie* case, a burden of production shifts to the defendant which requires it to articulate a legitimate, nondiscriminatory reason for its decision. *Hicks,* 509 U.S. at 506–08, 113 S.Ct. at 2747; *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094; *Sample,* 61 F.3d at 547. The defendant must produce "evidence which, *taken as true,* would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action." *Sample,* 61 F.3d at 547 (quoting *Hicks,* 509 U.S. at 509, 113 S.Ct. at 2748) (emphasis in original). The defendant's burden is one of production, not persuasion. *Id.* If the defendant meets this burden, the presumption of discrimination created by the *prima facie* case drops out, and the plaintiff must produce evidence proving that those reasons are merely pretextual—that the real reasons were discriminatory. *Hicks,* 509 U.S. at 515–17, 113 S.Ct. at 2752; *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095; *Sample,* 61 F.3d at 547. " 'The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.' " *Hicks,* 509 U.S. at 507, 113 S.Ct. at 2747 (quoting *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093).

On appeal, the EEOC presents two main grounds for reversal: First, the EEOC asserts that when the Center claimed Braddy quit, the Center failed to meet its burden to articulate a legitimate, nondiscriminatory reason for its employment action. Second, the EEOC contends genuine issues of material fact exist concerning the pretextuality of the Center's proffered reason, and thus that the district court improperly entered summary judgment for the Center.

*A.*

■ The parties dispute the events on Braddy's last day of work. Braddy contends she was discharged, but the Center asserts she left voluntarily. According to the EEOC, assuming Braddy established a *prima facie* case of racial discrimination, which the Center chose not to dispute, the Center cannot articulate a legitimate, nondiscriminatory reason for discharging Braddy when it contends it did not discharge her at all. The EEOC thus comes at the Center with a two-step argument: First, as an indispensable part of its *prima facie* case, it asserts that Braddy was discharged. Second, the EEOC contends the Center cannot overcome the presumption of discrimination created by the *prima facie* case (which alleged a discharge) because the Center denied there was a discharge. Therefore, the EEOC reasons, the Center should not have been granted summary judgment.

Understandably, the EEOC hopes to have it both ways. By asserting Braddy's discharge, it gets its *prima facie* case. Then, by asserting the Center's earlier contention that Braddy resigned, the EEOC claims a disputed fact that forces a trial. On the other hand, the Center, while initially claiming Braddy was not fired, accepted the allegation of termination. It did so not to admit pretext, but to advance past a disputed fact question to a dispositive issue that enables resolution short of trial. Pretext is a cover for racial animus. "[P]retext ... means a lie, specifically a phony reason for some action." *Russell v. Acme–Evans Co.,* 51 F.3d 64, 68 (7th Cir.1995). An admission that Braddy was fired hardly demonstrates racial bias. The Center's acceptance of the allegation of termination can even be seen as an accommodation to Braddy because it allowed her to collect unemployment compensation. It does not matter. The EEOC still must prove that the exam requirement was a pretext in order to demonstrate that race must have been a determining factor.

■ Although termination was a necessary part of Braddy's *prima facie* case, this court may advance to an ultimate issue in a summary judgment analysis and consider the discrimination question notwithstanding a dispute over a fact necessary for a *prima facie* case. *See Sample,* 61 F.3d at 548 (where employer meets burden of production, whether plaintiff truly made out *prima facie* case is irrelevant) (quoting *United States Postal Serv. Bd. of Governors v. Aikens,* 460 U.S. 711, 715, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983)); *Holmberg v. Baxter Healthcare Corp.,* 901 F.2d 1387, 1391 (7th Cir.1990) (where plaintiff had not met burden of showing pretext, not necessary to decide

whether plaintiff also established a *prima facie* case) (citing *Box v. A & P Tea Co.*, 772 F.2d 1372, 1378 (7th Cir.1985), *cert. denied*, 478 U.S. 1010, 106 S.Ct. 3311, 92 L.Ed.2d 724 (1986)). To expedite the process it may be preferable to get past the *prima facie* case and examine the pertinent issue of whether there was discrimination in a job action. *E.g., Jayasinghe v. Bethlehem Steel Corp.*, 760 F.2d 132, 135 (7th Cir.1985) (*prima facie* threshold no longer relevant once defendant has come forward with evidence of legitimate reasons for its actions that would rebut a *prima facie* showing of discrimination) (citing *Aikens*, 460 U.S. at 713–14, 103 S.Ct. at 1480–81 (1983)). Other courts have accepted the plaintiff's version in order to establish a *prima facie* case and then advanced to the issue of whether the employer's reason was a pretext. *See, e.g., Cromer v. Perdue Farms, Inc.*, 900 F.Supp. 795, 800 (M.D.N.C.1994) (summary judgment granted to employer where employee claimed she was fired but employer claimed she resigned) (citing *Computer Servicenters, Inc. v. Beacon Mfg. Co.*, 443 F.2d 906, 906–07 (4th Cir.1971)), *aff'd*, 65 F.3d 166 (4th Cir.1995). The district court correctly considered the ultimate issue in this case on summary judgment.

The Center has a right to offer a legitimate, nondiscriminatory reason for its actions regardless of whether Braddy quit or was fired. Whatever the outcome of the fact dispute concerning Braddy's termination, the Center's position is the same: the dispute arose as a result of Braddy's failure to become eligible for the exam. Even if a factfinder were to determine that Braddy was fired, the Center's proffered reason for termination would remain unchanged. The Center has admitted termination for purposes of summary judgment. Braddy's failure to become eligible for the exam is an objective fact that neither side disputes.[2] The question becomes whether Braddy can prove that the Center discriminated against her because of her race instead of her failure to take the exam and qualify.

The EEOC insists on taking a detour past that significant burden of proof. It contends that the Center cannot overcome the presumption of discrimination because it initially denied there was an involuntary discharge. The EEOC essentially claims that the Center is handcuffed with an admission that makes the presumption in the *prima facie* case an irretrievable fact. Such a construction of Title VII law would result in outcomes not intended by Congress. Any time an employer and employee disagreed about how the employee left the company, the employee would automatically win if the employee could sufficiently allege a *prima facie* case. Such a result is obviously not the purpose of the statute nor of the burden-shifting process established in *McDonnell Douglas/Burdine. Hicks*, 509 U.S. at 506–17, 113 S.Ct. at 2747–2752; *Burdine*, 450 U.S. at 254–56, 101 S.Ct. at 1094–95. *See, e.g., Bailey v. City of Lawrence, Indiana*, 972 F.2d 1447, 1452 (7th Cir.1992) ("[c]ourts are bound to construe a statute to avoid absurd results").

The Center may articulate what it contends to be a legitimate, nondiscriminatory reason for termination regardless of the circumstances of termination. The district court found, and we agree, that the Center did exactly that: if on October 11, 1991 Boettcher fired Braddy, she was fired because she failed to render herself eligible for the state licensure exam. On the other hand, if Braddy resigned or "volunteered" to be terminated it was all for the same reason—she failed to become eligible to take the exam. The undisputed facts support this reason, and the Center's burden to articulate such a reason is not heavy. *Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094.

Once such a legitimate, nondiscriminatory reason has been proffered, the *prima facie* case falls aside and the question is simply whether the plaintiff can prove that the employer acted because of an illegitimate mo-

---

**2.** The Eleventh Circuit's decision in *Turnes v. AmSouth Bank, N.A.*, 36 F.3d 1057 (11th Cir. 1994), is not to the contrary. In *Turnes*, the court held that for an employer to meet its intermediate burden of articulating a legitimate, nondiscriminatory explanation for hiring an appli-

cant, *Burdine* does not relieve the employer of the obligation to produce a reason that was available to it at the time the decision was made. *Id.* at 1061. The Center's justification comports with this rule.

tive. *Pilditch v. Bd. of Educ. of City of Chicago,* 3 F.3d 1113, 1116 (7th Cir.1993), *cert. denied,* — U.S. —, 114 S.Ct. 1065, 127 L.Ed.2d 385 (1994). We turn now to that question.

B.

The EEOC identifies three areas which it contends do not entitle the Center to summary judgment in this final step in the burden-shifting method of proof. It argues that a genuine issue of material fact exists as to whether the Center's proffered reason was pretextual because of (1) the Center's accession to the proposition that Braddy was terminated; and (2) the comparison of Braddy's treatment to that of white social worker Mark Sinz. The EEOC also submits it overcame the inference of nondiscrimination created by Boettcher hiring and firing Braddy.

First, the EEOC argues it can prove pretext indirectly by showing that the reason proffered was insufficient to warrant discharge. *See, e.g., Lenoir v. Roll Coater, Inc.,* 13 F.3d 1130, 1133 (7th Cir.1994). It repeatedly asserts the Center cannot "honestly believe" the reason it gave for terminating Braddy because it does not even believe it terminated her. But as discussed above, even if Boettcher's actions on October 11, 1991 constituted termination, the district court properly permitted the Center to explain why Braddy's employment ended. The undisputed evidence was that Braddy's employment ended because she failed to make herself eligible for the October 1991 licensure exam. No record evidence exists to the contrary. Boettcher and Braddy agreed that the paperwork for licensure had to be completed. Boettcher's undisputed testimony was that she was upset at Braddy's failure after 10 months to live up to their agreement. The exit form they executed stated the termination reason as failure to complete papers for licensure. Even though the Center accepted the termination premise, no matter how Braddy's exit was defined, she left because she was not eligible for the test. Whether she quit, volunteered for termination, or was fired would not matter when we examine the motive behind the rule that was enforced—no test eligibility. Without record evidence to rebut the Center's expla-

nation, the EEOC has failed to establish pretext.

The EEOC also contends the evidence concerning Mark Sinz, the white social worker, raises a fact issue as to pretext. The EEOC argues that Sinz was not discharged for twice failing to take the exam for which he was eligible while Braddy was discharged for failing to take the first exam for which she was eligible. Our review of the record draws us to the same conclusion as that of the district court: Braddy and Sinz were not similarly situated. Because Sinz had a master's degree in social work, he was automatically eligible to take the exam. Braddy, however, had to present documents proving three years of supervised clinical experience to sit for the exam. Braddy fell short on a condition Sinz did not have to meet. Moreover, Sinz asked to be (and was) excused from the February 1991 examination, while Braddy went back on her agreement to have the paperwork ready to submit to the Department as soon as the six-month supervisory period had ended. On top of that, and unlike Sinz, she failed to alert Boettcher that she was not able to sit for the exam.

Even if we concluded Sinz and Braddy were similarly situated, "comparative" evidence is dispositive for summary judgment purposes only if it shows "systematically more favorable treatment toward similarly situated employees not sharing the protected characteristic." *Loyd v. Phillips Bros. Inc.,* 25 F.3d 518, 522 (7th Cir.1994); *see also Troupe v. May Dept. Stores Co.,* 20 F.3d 734, 736 (7th Cir.1994) (must be evidence that non-protected employees received "systematically better treatment"). The EEOC presented no evidence of systematically more favorable treatment of white social workers than black social workers at the Center. The lower court gave the EEOC the benefit of the doubt and used the evidence to find that a *prima facie* case had been established. This does not mean that the same evidence could be used to establish pretext. Without evidence the Center systematically treated white social workers better than black social workers, the EEOC has failed to prove the Center intentionally discriminated against Braddy because of her race.

Finally, the EEOC argues the district court erred when it held that insufficient evidence existed to overcome the inference of nondiscrimination created by the undisputed fact that Boettcher hired and fired Braddy. This court has recognized the consideration of such an inference in the context of age discrimination. *Rand v. CF Indus., Inc.*, 42 F.3d 1139, 1147 (7th Cir.1994) (and citations therein, including *Proud v. Stone*, 945 F.2d 796, 797 (4th Cir.1991)). We see no reason why this inference, which could actually have a positive effect of encouraging employers to hire individuals in protected groups, should not apply in race discrimination cases as well. The facts establish not only that Boettcher hired Braddy knowing she was black, but that Boettcher agreed to supervise Braddy for six months so Braddy would be eligible to sit for the licensure exam. If Boettcher wished to discriminate against Braddy because of her race, she could have refused to hire her in the first place, or she could have discharged her because of her deficient qualifications. Boettcher did neither. Instead, Boettcher supervised Braddy and encouraged her to acquire the license. The same hirer/firer inference has strong presumptive value. *See id.*, 42 F.3d at 1147. The district court did not err when it used this factor along with others to find nondiscrimination.

The district court also did not err when it found the EEOC had not proffered evidence race was even a consideration. The record reveals no evidence from which a rational fact-finder could infer that race was a determining factor in Braddy's departure from the Center. There is *no evidence* Boettcher historically treated Braddy unfairly, that race-based comments were made about Braddy, or that another social worker failed to live up to a promise to become eligible for the licensure exam but retained her position. Boettcher hired Braddy, the only black applicant for the position. Boettcher offered to supervise Braddy's work during the six-month period needed for Braddy to qualify for the licensure exam. Boettcher informed Braddy from the beginning that to remain employed she must complete the paperwork and get her license. Given such evidence, the EEOC has not overcome the Center's legitimate, nondiscriminatory reason for Braddy's termination.

### III.

Any dispute whether Braddy quit or was discharged is ultimately immaterial to this case's outcome, as the undisputed facts reveal her race played no part in her departure from the Center. The purpose of the indirect, burden-shifting method of proof is to establish or disprove actual discrimination. If the plaintiff cannot prove the defendant discriminated, plaintiff loses. Because the EEOC's claim of race discrimination against the Center fails as a matter of law, the district court's grant of summary judgment is

AFFIRMED.