Kenya RUNNELS, Plaintiff,

v.

ARMSTRONG WORLD INDUSTRIES, INC., Defendant.

No. 99–2068.

United States District Court, C.D. Illinois, Danville/Urbana Division.

July 20, 2000.

Kenya Runnels, Kankakee, IL, pro se.

Edward C. Jepson, Jr., Thomas W. Snyder, Vedder, Price, Kaufman & Kammholz, Chicago, IL, for Defendant.

### ORDER

McCUSKEY, District Judge.

Plaintiff Kenya Runnels filed a complaint against Armstrong World Industries, Inc. ("Armstrong") in this court on April 26, 1999. In that complaint, she alleges that Armstrong, her former employer, discriminated against her on the basis of her race and sex in violation of Title VII. 42 U.S.C. § 2000e–2 (West 2000). On May 1, 2000, Armstrong filed a Motion for Summary Judgment (# 21). Following Plaintiff's response to that motion, and Armstrong's reply to her response, Armstrong filed a Motion to Withdraw Argument Made in its Reply Memorandum in Support of its Motion for Summary Judgment (# 27). For the following reasons, both Armstrong's Motion to Withdraw and its Motion for Summary Judgment are GRANTED.

### BACKGROUND

Armstrong manufactures commercial tile in Kankakee, Illinois. Plaintiff, an African–American woman, began working for Armstrong on February 16, 1998, along with twelve other new employees.

At that time, Darrin O'Brien, a white male, was the plant's training facilitator. In that role, he was responsible for dividing new employees into teams. During the first day of orientation, O'Brien explained to the new employees, including Plaintiff, that their status as employees was probationary and that they would be evaluated at the end of ninety days to determine whether they would continue as full-time employees.

O'Brien assigned Plaintiff to a team that included two other African–Americans as well as a white employee. During the first six weeks of training, known as "Phase I," Plaintiff observed tile manufacturing processes. Each week, she turned in written summaries of what she had seen. She also met regularly with other team members to discuss the plant's operations. At the end of Phase I, Plaintiff and her other team members put together a presentation outlining the production processes on one of the lines.

Following Plaintiff's completion of Phase I, O'Brien assessed Plaintiff as someone who was eager to learn. However, he also believed that she lacked a basic understanding of the manufacturing processes and sometimes lacked focus on the task before her. He discussed these deficiencies with her as part of her thirty-day review, which took place around March 31, 1998.

After completing Phase I, Plaintiff began Phase II of her training. She and her other team members were assigned to work various shifts for on-the-job training. Plaintiff was assigned to work the second shift on Line 1 under Tim Blanchette, a white male. Blanchette was responsible for evaluating the probationary team and meeting with each team member weekly to

review performance and to suggest ways to improve. Blanchette also kept track of the positions for which each probationary employee was trained and his or her performance. Blanchette was responsible for identifying at the end of the ninety-day probationary period any probationer who had performed poorly or exhibited bad work habits. Blanchette met with Plaintiff and three other probationary employees on March 30, 1998, their first day on Line 1. Among other things, Blanchette advised them to be assertive in asking questions and helping others.

On Line 1, raw material is assembled, mixed, heated, and then placed on a conveyer belt known as the "Mottle Line," where the tile cools, is cut, and is then mixed with colors. The tile proceeds on a conveyor to another heater and then to the "Finish Line," where it is manipulated into sheets called "blankets," cooled, waxed, buffed, cut into individual pieces, inspected, and boxed for shipment. While working on Line 1, probationary employees rotate through training on several different jobs. Because of the number of different positions on Line 1, each team member cannot be trained on each job. However, each is trained on the "Packer," which is a machine that stacks finished tiles into boxes and prepares them for shipment. Each is also trained as a "Production Attendant," which involves general duties such as sweeping the machine areas, cleaning the mixers, and assisting other employees.

Plaintiff began her training on Line 1 by learning about general pattern changes, Production Attendant duties, and safety procedures. Plaintiff was then assigned to train on the Packer, the simplest job on Line 1. Although most probationary employees master the Packer in just two days, Plaintiff needed five days of training. Armstrong asserts that even then she did not demonstrate a good grasp of the job. In Blanchette's opinion, Plaintiff did not react quickly to problems that occurred at her station, and complained repeatedly about the line's speed.

Plaintiff then began training as a "Calendar Feeder Operator." A Calendar Feeder Operator must set the speed and adjust the widths of the conveyer belts to ensure that the tile blankets maintain a proper consistency and uniformity as they move from the Mottle Line to the Finish Line. Because the tile blankets are continually combining with other blankets and moving from one conveyor belt to another, the Calendar Feeder Operator must maintain proper speed and width settings so that the blankets move properly. Otherwise, a blanket might jam the conveyer belt and shut down the operation.

Blanchette believed that Plaintiff had more trouble with this job than did other probationary employees. He based this conclusion in part on the fact that three shutdowns occurred while Plaintiff was the operator. Blanchette spoke to Plaintiff about the shutdowns and suggested changes to the way she adjusted the settings. She responded that she had not previously worked in a manufacturing plant, and added that she was bored at the Calendar Feeder and hoped for something exciting to happen. Blanchette explained that excitement was a bad thing on Line 1, and asked Plaintiff if she had any questions about how to run the Calendar Feeder. Plaintiff had no questions, and Blanchette assigned her to an extra week of training as a Calendar Feeder Operator.

On April 28, 1998, Blanchette explained to Plaintiff that she would be evaluated at the end of her probationary period for her performance on the three jobs for which she had trained—Production Attendant, Calendar Feeder Operator, and Packer. He told her that she needed to improve her performance on the Calendar Feeder, and assigned her two additional days of training in that position.

Blanchette continued to find deficiencies in Plaintiff's performance. On May 7, 1998, Plaintiff and another employee, Maurice Richardson, were assigned as Production Attendants to clean a certain piece of equipment. They did not tell anyone when

they had completed this task, and when Blanchette inspected it, he found that it needed to be cleaned again. On May 12, 1998, Blanchette saw Plaintiff leave for her break even though other employees in her area needed assistance at that time, in violation of previously given instructions to remain and help in such a situation. Blanchette stated that when Plaintiff was then due to return from that break, he observed her talking to another employee for about fifteen minutes. Blanchette told Plaintiff that she needed to stay productive.

Around May 15, 1998, near the end of Plaintiff's probationary period, Blanchette met with O'Brien, as well as Plant Manager Brian Carson, and Human Resource Coordinator Jo Jo Wydner to discuss the probationary employees. Blanchette told the group that although Plaintiff appeared to be trying hard, she had not fully grasped operational concepts. Moreover, he added, Plaintiff did not appear alert nor did she demonstrate a willingness to assist others when they needed help. Blanchette told the others about the incidents discussed above, as well as other incidents in which Plaintiff did not respond to calls for assistance over the overhead public announcement system. He also discussed instances in which he saw Plaintiff talking with other employees that were near the Calendar Feeder instead of paying attention to feeder operations. A few times, Blanchette noted, he even observed her with her back to the line.

O'Brien and Blanchette agreed that Plaintiff had not satisfied probationary standards and recommended her termination. Carson and Wydner approved that decision, and O'Brien then prepared a memorandum documenting the alleged deficiencies in Plaintiff's performance. Plaintiff was terminated on May 18, 1998.

On September 3, 1998, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC"). In that charge, she alleged that Armstrong had discriminated against her on the basis of her race when it terminated her employment. In her deposition, Plaintiff claims that she told that EEOC investigator that she believed Armstrong also discriminated against her on the basis of her sex. However, Plaintiff did not check the box marked "sex" on the claim form nor does the charge mention sex discrimination. Plaintiff admitted that she reviewed the charge before she signed it, but stated that she "didn't pay attention" to the missing allegation of sex discrimination, and noted that she was not assisted by an attorney when she signed it.

Plaintiff filed her complaint in this court on April 26, 1999, alleging race and sex discrimination. This Motion for Summary Judgment followed on May 1, 2000. Along with that motion, Armstrong filed a Memorandum in Support (# 22) and a Statement of Undisputed Facts (# 23). On May 18, 2000, Plaintiff filed a response (# 25) to Armstrong's Motion for Summary Judgment, but no response to its statement of facts. On May 22, 2000, Armstrong filed a Reply Memorandum (# 26), and on May 24, 2000, filed a Motion to Withdraw (# 27) one of the arguments made in that reply.

## ANALYSIS

Summary judgment is granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In ruling on a motion for summary judgment, the court must decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial. *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir.1994). In reaching this decision, the court must consider the evidence in the light most favorable to the party opposing summary judgment. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The burden of establishing that no genuine issue of

material fact exists rests with the movant. *Jakubiec v. Cities Serv. Co.*, 844 F.2d 470, 473 (7th Cir.1988). However, neither the mere existence of some factual dispute between the parties nor the existence of some metaphysical doubt as to the facts is sufficient to defeat a motion for summary judgment. *McCreary v. Libbey–Owens–Ford Co.*, 132 F.3d 1159, 1164 (7th Cir. 1997).

As an initial matter, the court must address Plaintiff's response to the summary judgment motion because that response determines how the court views the facts for purposes of ruling on this motion. Plaintiff is proceeding pro se in this case. Accordingly, when Armstrong filed its Motion for Summary Judgment, the court sent Plaintiff notice pursuant to *Lewis v. Faulkner*, 689 F.2d 100 (7th Cir.1982). *See Timms v. Frank*, 953 F.2d 281, 285 (7th Cir.1992), *cert. denied*, 504 U.S. 957, 112 S.Ct. 2307, 119 L.Ed.2d 228 (1992) (extending rule of *Lewis v. Faulkner* to all pro se litigants). Specifically, the notice explained the consequences Plaintiff would face if she did not submit affidavits to oppose Armstrong's Motion for Summary Judgment. It explained that Plaintiff could not simply rely upon the allegations of her complaint, but that she must set forth specific facts demonstrating a genuine issue of material fact for trial. The letter concluded by cautioning, "If you do not submit affidavits or other documentary evidence contradicting the defendant's assertions, the defendant's statement of facts will be accepted as true for purposes of summary judgment."

On May 18, 2000, Plaintiff filed her response to Armstrong's motion. The response consisted of one paragraph requesting that the court deny Armstrong's motion and that it allow the case to proceed to trial. Plaintiff stated that she was certain she could prove that Armstrong engaged in race and sex discrimination if she is allowed to present her own testimony and that of other witnesses. Plaintiff, however, submitted no affidavits or other documentary evidence demonstrating the likely substance of this testimony.

Because the consequences of summary judgment are so severe, courts "must always guard against premature truncation of legitimate lawsuits merely because of unskilled presentations." *Kincaid v. Vail*, 969 F.2d 594, 598–99 (7th Cir.1992), *cert. denied sub nom, Sceifers v. Vail*, 506 U.S. 1062, 113 S.Ct. 1002, 122 L.Ed.2d 152 (1993) (*citing Murrell v. Bennett*, 615 F.2d 306, 311 (5th Cir.1980)). Thus, courts do not hold pro se litigants to the same stringent standards as formally trained attorneys, and the technical rigor of summary judgment procedures is inappropriate. *Kincaid*, 969 F.2d at 600. Accordingly, the court will not hold Plaintiff to the same technical requirements to which it holds parties represented by counsel.

Nevertheless, the court still holds Plaintiff to the same substantive standards as other civil litigants when it considers the motion for summary judgment. *Kincaid*, 969 F.2d at 599. Thus, as the party who ultimately bears the burden of proof on a particular issue, Plaintiff may avoid summary judgment only if she affirmatively demonstrates, by specific factual allegations, that there is a genuine issue of material fact requiring a trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Furthermore, Plaintiff "should not be allowed to proceed with a case on the mere hope that trial would produce the evidence [she] was unable to garner at the stage of summary judgment." *Parker v. Federal Nat'l Mortgage Ass'n*, 741 F.2d 975, 980 (7th Cir.1984). Thus, even though Plaintiff is not held to the same rigors as formally trained attorneys, summary judgment is proper if she makes no factual allegations to support her claims.

Moreover, because Plaintiff has submitted no facts or evidence to contradict Armstrong's version of events, Armstrong's facts are undisputed for purposes of this motion. In its reply to Plaintiff's response to the summary judgment motion, Armstrong argued that Local Rule

7.1 requires a party opposing summary judgment to file a separate document that responds to each of the movant's undisputed facts, either admitting or contesting each fact separately. Local Rule 7.1 further requires the opposing party to cite to discovery material or affidavits supporting the contention that the movant's fact is disputed. Otherwise, the rule provides, the movant's facts are deemed admitted.

Armstrong later moved to withdraw this argument, recognizing that the court does not hold a pro se litigant to the same procedural rigors as a litigant represented by counsel. Nevertheless, Plaintiff must offer some response to Armstrong's assertions, even if that response does not comply with the strict requirements of Local Rule 7.1. Moreover, as noted above, the court explicitly warned Plaintiff of the consequences she faced by not responding to Armstrong's assertions and evidence. Accordingly, because she failed even to address Armstrong's factual allegations, the court deems all of Armstrong's properly supported facts admitted. *See Brasic v. Heinemann's Inc.*, 121 F.3d 281, 284 (7th Cir.1997). With that in mind, the court now turns to the merits of Armstrong's Motion for Summary Judgment on each of Plaintiff's claims.

### A. *Plaintiff's Claim of Sex Discrimination*

■ Plaintiff alleges that Armstrong discriminated against her on the basis of both her race and her gender. However, her charge with the EEOC did not include a claim of gender discrimination. Accordingly, Armstrong argues, her claim of sex discrimination is barred. This court agrees.

As a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in her EEOC charge. *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 47, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). This rule serves the dual purpose of affording the EEOC and the employer an opportunity to settle the dispute through conference, conciliation, and persuasion, and of giving the employer some warning of the conduct about which the employee is aggrieved. *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir.1992); *Schnellbaecher v. Baskin Clothing Co.*, 887 F.2d 124, 127 (7th Cir.1989). Although the rule is not jurisdictional, it is a condition precedent with which Title VII plaintiffs must comply. *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 864 (7th Cir.1985).

Here, Plaintiff did not include her claim of sex discrimination in her EEOC charge. In her deposition, Plaintiff stated that she told that EEOC investigator that she believed Armstrong discriminated against her because of her sex as well as her race. However, she did not check the box marked "sex" on the claim form nor does the charge allege sex discrimination. Plaintiff admitted that she reviewed the charge before she signed it, but stated that she "didn't pay attention" to the missing allegation of sex discrimination.

■ Because most EEOC complaints are prepared by non-lawyers, courts do not require an aggrieved employee to allege with rigorous specificity every claim forming the basis of her complaint. *See Taylor v. Western & Southern Life Ins. Co.*, 966 F.2d 1188, 1195 (7th Cir.1992). Thus, an employee may bring a discrimination claim that she failed to assert in the EEOC charge if that claim is "like or reasonably related to" allegations included in the charge and growing out of those allegations. *Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.*, 538 F.2d 164, 167 (7th Cir.1976), *cert. denied*, 429 U.S. 986, 97 S.Ct. 506, 50 L.Ed.2d 598 (1976). A plaintiff satisfies this requirement if (1) a reasonable relationship exists between the claims in the charge and the allegations in the complaint; and (2) the allegations in the complaint could be reasonably expected to stem from those in the charge. *Cheek v. Western and Southern Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir.1994). If a plaintiff claims one theory of discrimination in her EEOC charge and a different discriminatory basis in her complaint, the two theories are not reasonably related unless the

allegations in the complaint may be reasonably inferred from those in the charge. *See Cheek,* 31 F.3d at 503 (holding that sexual harassment claim cannot be reasonably inferred from sexual discrimination claim in plaintiff's EEOC charge).

Here, Plaintiff alleged in her EEOC charge discrimination based on race only. Discrimination based on gender is generally entirely different from discrimination based on race, and Plaintiff has alleged no facts to show that these claims are related in her particular case. *See Moore v. Allstate Ins. Co.,* 928 F.Supp. 744, 748 (N.D.Ill.1996). Thus, Plaintiff failed to satisfy a condition precedent to bringing a sex discrimination claim in this court, and the court grants Armstrong's summary judgment motion on that claim.

### B. *Plaintiff's Claim of Race Discrimination*

Plaintiff did include in her EEOC charge, however, her claim that Armstrong discriminated against her on the basis of her race. Accordingly, that claim is properly before this court.

■ The materials presented to this court for purposes of summary judgment indicate that there is no direct evidence of race discrimination. Plaintiff must therefore rely on the burden-shifting method set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under that framework, Plaintiff must show that (1) she is a member of a protected class; (2) she was performing her job adequately; (3) she suffered a materially adverse employment action; and (4) others outside the protected class were treated more favorably. *Gonzalez v. Ingersoll Mill. Mach. Co.,* 133 F.3d 1025, 1031–32 (7th Cir.1998) (*citing McDonnell Douglas Corp.,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668). If these elements are shown, Plaintiff raises a rebuttable presumption of discrimination. At that point, "the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its action." *Sirvidas v. Commonwealth Edison Co.,* 60 F.3d 375, 377–78 (7th Cir.1995). If

Armstrong then offers a legitimate explanation, the presumption of discrimination dissolves and the burden of persuasion shifts back to Plaintiff to prove that Armstrong's proffered reason was pretextual. *Sirvidas,* 60 F.3d at 378.

There is no dispute in this case that Plaintiff satisfies the first element of her prima facie case. As an African–American, she falls within a protected class. Moreover, she clearly satisfies the third element in that she was terminated. Armstrong does dispute, however, that Plaintiff can satisfy the second and fourth elements. Specifically, Armstrong disputes that Plaintiff performed her job adequately and that similarly-situated white employees were treated more favorably.

As noted above, Plaintiff has offered no affirmative evidence whatsoever in this case. As a result, she has failed to offer evidence to establish that she was performing the job adequately or that similarly-situated non-African-American employees were treated more favorably. On that basis alone, the court could find that Plaintiff has failed to establish a prima facie case of race discrimination and that summary judgment is therefore proper on this claim.

■ Yet even if Plaintiff had satisfied her prima facie case, summary judgment in favor of Armstrong would be proper because Armstrong has offered evidence of a legitimate non-discriminatory reason for its decision to terminate Plaintiff at the end of her probationary period. The Seventh Circuit has expressly approved of courts "advanc[ing] to an ultimate issue in a summary judgment analysis and consider[ing] the discrimination question notwithstanding a dispute over a fact necessary for a prima facie case." *EEOC v. Our Lady of the Resurrection Med. Ctr.,* 77 F.3d 145, 149 (7th Cir.1996); *see also Jayasinghe v. Bethlehem Steel Corp.,* 760 F.2d 132, 135 (7th Cir.1985) (stating that "[t]he prima facie threshold is no longer a relevant issue once the defendant has come forward with evidence of legitimate

reasons for its actions that would rebut a prima facie showing of discrimination"). Moreover, a court will often consider many of the same factors in determining both whether a plaintiff has met her employer's legitimate expectations and whether the employer has offered a legitimate, non-discriminatory reason for its action. In those cases, the court may proceed directly to issues regarding the employer's stated reason for termination. *Moore v. Nutra-Sweet Co.*, 836 F.Supp. 1387, 1395 (N.D.Ill. 1993) (*citing McCoy v. WGN Continental Broadcasting Co.*, 957 F.2d 368, 372 (7th Cir.1992)). Accordingly, regardless of whether Plaintiff has satisfied her prima facie case, the court may consider whether there is a genuine issue of material fact regarding Armstrong's proffered reason for its action. *See Plair v. E.J. Brach & Sons*, 105 F.3d 343, 347 (7th Cir.1997).

An employer's burden of producing evidence of a legitimate, nondiscriminatory reason "is merely a burden of production ... that is not difficult to satisfy." *Dale v. Chicago Tribune Co.*, 797 F.2d 458, 463 (7th Cir.1986), *cert. denied*, 479 U.S. 1066, 107 S.Ct. 954, 93 L.Ed.2d 1002 (1987). If the employer satisfies this burden, "the presumption [of discrimination] dissolves, and the burden shifts back to the employee to show that the employer's proffered reasons are a pretext for ... discrimination." *Anderson v. Baxter Healthcare Corp.*, 13 F.3d 1120, 1122 (7th Cir.1994). In order "for a reason to be 'legitimate,' in the sense of sufficient to rebut a prima facie case, it need not be a good or sympathetic justification for what the employer did; it need only be nondiscriminatory and ... explain why the challenged action was taken." *Timm v. Mead Corp.*, 32 F.3d 273, 275 (7th Cir.1994).

Here, Armstrong asserts that it terminated Plaintiff at the end of her probationary period because despite additional training, she never mastered certain important tasks, including operating the Packer and Calendar Feeder. In support of that assertion, Armstrong offers the affidavits of Plaintiff's supervisors, O'Brien and Blanchette. In O'Brien's affidavit, he

stated that although Plaintiff was eager to learn, she never acquired a basic understanding of manufacturing processes and sometimes lacked focus. In Blanchette's affidavit, he stated that he observed Plaintiff on several occasions looking away from work she was charged with monitoring, ignoring pages requesting her assistance, talking to other employees, and failing to assist others when they needed help.

Based on this evidence, the court finds that Armstrong has satisfied its burden of articulating a legitimate, nondiscriminatory reason for terminating Plaintiff. As a result, the burden shifts back to Plaintiff to establish that this proffered explanation is actually a pretext for race discrimination. To satisfy this burden, she must produce some independent evidence showing that the employer's proffered motives are not believable. *Roberts v. Separators, Inc.*, 172 F.3d 448, 451 (7th Cir.1999). The relevant inquiry is not whether the employee actually performed inadequately, but whether her employer honestly believed she did. *Sirvidas*, 60 F.3d at 378. In other words, an honest explanation of unequal treatment is not pretextual simply because it is poorly founded or unfair. *Pollard v. Rea Magnet Wire Co.*, 824 F.2d 557, 559 (7th Cir.1987), *cert. denied*, 484 U.S. 977, 108 S.Ct. 488, 98 L.Ed.2d 486 (1987). Moreover, the Seventh Circuit has cautioned courts not to "sit as a superpersonnel department that reexamines an entity's business decisions." *Dale v. Chicago Tribune Co.*, 797 F.2d at 464. Rather, if the employer "honestly believed in the nondiscriminatory reasons it offered, even if the reasons are foolish or trivial or even baseless," the employee cannot prevail. *See Debs v. Northeastern Illinois Univ.*, 153 F.3d 390, 396 (7th Cir.1998) (*quoting Hartley v. Wisconsin Bell, Inc.*, 124 F.3d 887, 890 (7th Cir.1997) (internal quotation marks omitted)).

As noted above, Plaintiff has offered no affirmative evidence of any kind in response to Armstrong's Motion for Summary Judgment. She has certainly

offered no evidence to show that Armstrong is lying when it says it terminated her for poor performance. In her deposition, she disputed her supervisors' assessments of her performance, and took issue with the weight Armstrong placed on those assessments. However, she set forth no evidence to call into doubt Armstrong's sincerity in relying on O'Brien's and Blanchette's unfavorable impressions of her performance in terminating her. Thus, she has failed to establish a genuine issue of material fact as to pretext, and Armstrong is entitled to summary judgment on Plaintiff's claim of race discrimination as well.

## CONCLUSION

For the foregoing reasons, Armstrong's Motion to Withdraw (# 27) and its Motion for Summary Judgment (# 21) are GRANTED. Consequently, the final pretrial conference set for August 31, 2000, and the jury trial scheduled to begin on September 11, 2000 are vacated. This case is terminated. Each party shall bear its own costs.