[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-11405

Non-Argument Calendar

_____

AISHA CHANGE,

Plaintiff-Appellant,

*versus*

MIDTOWN NEUROLOGY, P.C.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

D.C. Docket No. 1:19-cv-00885-SCJ

_____

Before WILSON, GRANT, and ANDERSON, Circuit Judges.

PER CURIAM:

Plaintiff–Appellant Aisha Change ("Change") appeals the district court's grant of summary judgment to Midtown Neurology, P.C. ("Midtown Neurology"). Change brought a two-count claim against Midtown Neurology for discrimination and retaliation in violation of the Americans with Disabilities Act of 1990 ("ADA"). The district court adopted the magistrate judge's report and recommendation ("R&R") and granted summary judgment to Midtown Neurology on both the discrimination and retaliation claims. Change has appealed solely the grant of summary judgment on the ADA retaliation claim. While her opening brief lists five separate issues on appeal, Change's argument boils down to a simple question: did Midtown Neurology satisfy its burden under the *McDonnell Douglas*/ *Burdine* framework of asserting a nonretaliatory justification for Change's alleged termination? *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 101 S. Ct. 1089 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973). Because we agree with the district court and magistrate judge that the answer is "yes," we affirm the grant of summary judgment.

## I.

In July 2018, Midtown Neurology hired Change as a Botox coordinator. Several months earlier, in May 2018, Change had

been diagnosed with pseudotumor cerebri, a condition that causes increased intracranial pressure and that is treated with medications and surgery to reduce the amount of cerebrospinal fluid in the head. Change completed several days of on-the-job training at Midtown Neurology and began her official employment there on July 30, 2018.

At Midtown Neurology, Change reported to Juanita Williams ("Williams"), the billing manager, who in turn reported to Deirdre Plato ("Plato"), the practice manager. In her first week as an employee, she missed two days of work, one day of which was for a post-operation doctor appointment. The next week, she had a lumbar puncture and was out for another two days. On August 17, 2018, Change emailed Williams that she had a surgery scheduled for August 21, 2018 and would be out for some time. Midtown Neurology told Change to take as much time off as she needed to recover from that surgery. Change returned to work on September 4, 2018 but was out again until September 24, 2018 to recover further.

After September 24, 2018, Change was absent or worked half days on September 27, October 5, and October 12, 2018. On October 16, 2018, Change fell out of her desk chair, and she missed the following two days of work. She returned to work October 19, 2018. When Change needed to miss days of work, she offered to perform remotely the work that she could do as a Botox coordinator. During Change's tenure with Midtown Neurology, she was

absent from work 29 business days of the 59 business days that Midtown Neurology was open.[1]

In mid-October 2018, Change told Williams that she would need more time off for another surgery. Her last day of employment with Midtown Neurology was October 19, 2018, though the parties dispute whether Williams terminated her employment or whether Change resigned. According to Change, she met with Williams on October 19, 2018, and Williams allegedly said that if Change did not resign, Williams would have to fire her because she needed another surgery. In contrast, Midtown Neurology contends that Change told Williams that she needed to take care of her health and that they agreed that Change would resign.

On April 4, 2019, Change filed a corrected amended complaint in the district court, alleging one count of discrimination and one count of retaliation in violation of the ADA. On February 3, 2021, a magistrate judge entered an R&R recommending that the district court grant summary judgment to Midtown Neurology on both claims. Change objected to the magistrate judge's recommendation of summary judgment on the ADA retaliation claim, but she did not object to the recommendation that summary

---

[1] Change argues that she actually was absent only 28 business days, as she disputed Midtown Neurology's time records which showed her as absent on August 20, 2018. The district court, in turn, found that she missed "at least" 27 days of the 59 business days that Midtown Neurology was open during the relevant period.

judgment be granted on the ADA discrimination claim. The district court overruled her objections and granted summary judgment to Midtown Neurology on both claims. Change then filed the instant appeal.

## II.

We review a district court's grant of summary judgment *de novo*, applying the same legal standards used by the district court. *Felts v. Wells Fargo Bank, N.A.*, 893 F.3d 1305, 1311 (11th Cir. 2018). "Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Jurich v. Compass Marine, Inc.*, 764 F.3d 1302, 1304 (11th Cir. 2014). We view all facts and reasonable inferences in the light most favorable to the nonmoving party. *Id.*

## III.

On appeal, Change argues that the district court erroneously granted summary judgment because Midtown Neurology could not satisfy its burden of producing a non-retaliatory justification for terminating her. The *McDonnell Douglas*/ *Burdine* framework for employment discrimination and retaliation claims is as follows:

> Under *McDonnell Douglas*, the initial burden rests on the plaintiff to establish, by a preponderance of the evidence, a prima facie case of discrimination. Once the plaintiff has set out a prima facie case, a presumption of discrimination arises. The intermediate burden of production then shifts to the employer to

articulate a legitimate, non-discriminatory explana-
tion . . . .   This intermediate burden is "exceedingly
light."  The employer need only offer admissible evi-
dence sufficient to raise a genuine issue of fact as to
whether it had a legitimate reason for [taking the ad-
verse employment action].

If an employer succeeds in carrying its intermediate
burden of production, the *McDonnell Douglas*
framework . . . drops out of the case, and the trier of
fact proceeds to decide the ultimate issue in the
case . . . .

On the other hand, where a plaintiff's prima facie case
is established, but the employer fails to meet its bur-
den of production, the unrebutted presumption of
discrimination stands.

*Turnes v. AmSouth Bank, NA*, 36 F.3d 1057, 1060–61 (11th Cir.
1994) (footnote omitted) (citations omitted) (quoting *Meeks v.
Comput. Assocs. Int'l*, 15 F.3d 1013, 1019 (11th Cir. 1994)).

Here, the magistrate judge concluded that Change had es-
tablished a prima facie case for her ADA retaliation claim.  He then
shifted the burden to Midtown Neurology, and he concluded that
Midtown Neurology satisfied its burden because "excessive absen-
teeism" was a legitimate, non-retaliatory basis for Change's alleged
termination.  He then concluded that Change had not shown that
excessive absenteeism was a pretextual justification for her alleged
termination, so he recommended granting summary judgment to
Midtown Neurology on the ADA retaliation claim.

Change's argument before the district court (objecting to the magistrate judge's R&R) and her only argument in her initial brief to this Court is that because Midtown Neurology maintained that Change voluntarily resigned, then it could not simultaneously contend that it actually relied upon Change's excessive absenteeism as the reason for firing her. Put differently, to satisfy its burden, Midtown Neurology had to show that it actually relied upon its proffered non-retaliatory reason for Change's alleged termination (*i.e.*, excessive absenteeism), which it could not do because it argued that it did not fire her in the first place. The district court overruled this objection, stating that the existence of a factual dispute over whether Change was fired or resigned did not preclude Midtown Neurology from arguing, in the alternative, that it had a legitimate non-retaliatory reason for Change's alleged termination should a factfinder agree with Change that Midtown Neurology had fired her.

Change raises this same objection on appeal, arguing that Midtown Neurology could not satisfy its burden under *McDonnell Douglas*/ *Burdine* because it could not show that it actually relied upon Change's excessive absenteeism as a basis for her alleged termination. She phrases this argument as the "Actual Reliance Rule": "An employer cannot meet its *Burdine* burden of producing a non-retaliatory justification for the challenged employment decision if it cannot show that it *actually relied upon* that justification in making the decision." We agree with the magistrate judge and district court that Midtown Neurology satisfied its burden of

showing a legitimate non-retaliatory reason for Change's alleged termination.

The Supreme Court in *Burdine* stated that a defendant "need not persuade the [factfinder] that it was actually motivated by the proffered reasons" but instead must present evidence that "raises a genuine issue of fact as to whether it discriminated [or retaliated] against the plaintiff." 450 U.S. at 254, 101 S. Ct. at 1094. In other words, the employer's evidence must "allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Id.* at 257, 101 S. Ct. at 1096. We have since interpreted *Burdine*'s holding as follows: "although . . . the employer need not *prove* it was actually motivated by the proffered reason, *Burdine* clearly does not relieve the employer from *producing* a reason that was available to it at the time of the decision's making," so "an employer may not satisfy its burden of production by offering a justification which the employer either did not know or did not consider at the time the decision was made." *Turnes*, 36 F.3d at 1061.

Here, Midtown Neurology has clearly satisfied this "exceedingly light" burden. *Id.* (quoting *Meeks*, 15 F.3d at 1019). Williams and Plato were aware of Change's many absences from the office and testified that those absences burdened Midtown Neurology's business. Change argues that, even if Midtown Neurology was aware of her excessive absenteeism, it never produced evidence that it relied upon that justification for terminating her because it contended that it did not terminate her, so absenteeism is merely a

"hypothetical reason" that could have (but did not in fact) justify her termination.

Accepting this argument, though, would substantially limit how employers could respond to claims of discrimination and retaliation. In effect, Change is asking us to hold that an employer who disputes whether it took an adverse employment action could not present, in the alternative, a legitimate reason for the alleged adverse employment action if proven. Neither *Burdine* nor any of our decisions requires that result. Instead, *Burdine* merely requires employers to produce evidence that would allow a factfinder to conclude that any alleged adverse employment action was not motivated by discrimination or retaliation. 450 U.S. at 254, 101 S. Ct. at 1094. Here, given that Change was absent from work at least 27 out of 59 working days, a factfinder could readily conclude that, if Change shows that she was fired, Midtown Neurology had a legitimate non-retaliatory reason for terminating her employment.

While this Court has never previously held in a published opinion[2] that an employer may argue that (i) it did not fire the

---

[2] We have previously reached this result in an unpublished opinion. *See Thomas v. STERIS Corp.*, 819 F. App'x 741, 745 (11th Cir. 2020) (per curiam) ("Separately, the district court did not err by allowing [the employer] to provide legitimate, non-discriminatory reasons for [the employee's] separation from the company even though [the employer] also maintained that he resigned and was not terminated, because the ultimate burden rested on [the employee] to show that those reasons were pretexts for discrimination or retaliation.").

plaintiff and (ii) it had a legitimate non-retaliatory reason for the plaintiff's alleged termination, we are persuaded by the reasoning of the Seventh Circuit that employers may assert these alternative positions under the *McDonnell Douglas*/ *Burdine* framework. *See E.E.O.C. v. Our Lady of Resurrection Med. Ctr.*, 77 F.3d 145, 150 (7th Cir. 1996) ("The [employer] has a right to offer a legitimate, nondiscriminatory reason for its actions regardless of whether [the employee] quit or was fired. . . . Even if a factfinder were to determine that [the employee] was fired, the [employer's] proffered reason for termination would remain unchanged."). In that case, the EEOC brought a claim on behalf of an employee alleging that the employer's firing of the employee was discriminatory. *Id.* at 146. The employer and employee disputed whether the employee was fired or resigned voluntarily. *Id.* at 149. The EEOC argued on appeal that summary judgment was inappropriate because the employer could not present a non-discriminatory reason for the alleged firing because the employer contended that the employee quit. *Id.* The Seventh Circuit rejected this argument, reasoning as follows:

> [The EEOC] contends that the [employer] cannot overcome the presumption of discrimination because it initially denied there was an involuntary discharge. The EEOC essentially claims that the [employer] is handcuffed with an admission that makes the presumption in the *prima facie* case an irretrievable fact. Such a construction . . . would result in outcomes not intended by Congress. Any time an employer and

employee disagreed about how the employee left the company, the employee would automatically win if the employee could sufficiently allege a *prima facie* case. Such a result is obviously not the purpose of . . . the burden-shifting process established in *McDonnell Douglas/ Burdine*.

*Id.* at 150. We agree. Midtown Neurology was not "handcuffed" by its contention that Change resigned; it was permitted to argue, in the alternative, that if Change successfully proved that she was fired then Midtown Neurology had a non-retaliatory basis for her termination. Ample evidence supports this non-retaliatory basis. Even under Change's version of the facts, Williams asked her to resign in lieu of being fired because of her excessive absenteeism. Thus, it is clear that Midtown Neurology's actions—whether merely agreeing to a mutually agreeable resignation or a firing—were in reliance on Change's excessive absenteeism.[3]

For the foregoing reasons, the district court's grant of summary judgment is

**AFFIRMED.**

---

[3] Change raises for the first time in her reply brief several arguments concerning whether Midtown Neurology's proffered justification of excessive absenteeism was pretext for retaliatory intent. We do not address the question of pretext because "[a]rguments raised for the first time in a reply brief are not properly before the reviewing court." *United States v. Oakley*, 744 F.2d 1553, 1556 (11th Cir. 1984).